

**BELL, SHIVAS & FASOLO, P.C.**
150 Mineral Springs Dr.
P.O. Box 220
Rockaway, New Jersey 07866
Tel: 973-442-7900
Fax: 973-442-7990
Attorneys for Petitioner

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA

5:14-mc-2

IN RE PETITION OF:                :
                                  :
                                  :   MISCELLANEOUS ACTION:
ANTHONY S. PITCH                  :
                                  :
                                  :

**PETITONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR ORDER DIRECTING RELEASE OF TRANSCRIPTS AND RELATED MATERIALS OF THE "MOORE'S FORD LYNCHING" GRAND JURY CONVENED IN ATHENS, GEORGIA ON DECEMBER 2, 1946**

Joseph J. Bell, Jr., *Pro hac vice*
Bell, Shivas & Fasolo, P.C.
150 Mineral Springs Dr.
Rockaway, NJ 07866
(973)442-7900
(97)442-7990 (fax)

## TABLE OF CONTENTS

I.   **Factual Background** .................................................................................. 1

    A. **The Petitioner** ................................................................................... 1

    B. **The Moore's Ford Lynching** ............................................................ 2

II.  **Legal Argument** ....................................................................................... 4

    A. **Legal Standard for the Release of Grand Jury Transcripts** ...................... 4

    B. **The Court Has Authority To Unseal Historically Significant Grand Jury Records** ............................................................................. 6

    C. **Special Circumstances Exist Warranting the Release of the Moore's Ford Lynching Grand Jury Materials** ...///............................................ 8

III. **Conclusion** ............................................................................................ 11

# TABLE OF AUTHORITIES

**Cases:**

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 221 (1979)................................................5

*In re Biaggi*, 478 F.2d 489 (2d Cir. 1973)............................................................................... 4, 5

*In re Am. Hist. Ass'n*, 49 F. Supp. 2d 274 (S.D.N.Y. 1999) ......................................................... 6

*In re Am. Hist. Ass'n*, 62 F. Supp. 2d 1100 (S.D.N.Y. 1999)........................................................5

*In re Petition of Craig*, 131 F.3d 99 (2d Cir. 1997) ................................................5,6,7,8,9,10

*In re: Petition of Kutler*, Misc. No. 10-547 (RCL), (D.D.C., July 29, 2011) ...........................7,8

*In re Petition of National Security Archive*, Summary Order at 1-2, 08 Civ. 6599 (S.D.N.Y. Aug. 26, 2008) ...................................................................................................................................... 6

*In re: Petition of Tabac*, 2009 WL 5213717 (M.D.Tenn., April 14, 2009) ................................ 7

*In re Special Feb., 1975 Grand Jury*, 662 F.2d 1232, 1235-36 (7th Cir. 1981) ........................ 5

*Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959) .................................... 5

*United States v. Aisenberg*, 358 F.3d 1327, 1347 (11th Cir. 2004) ............................................ 5

*United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681–82 n.6 (1958) ............................. 4

**Miscellaneous:**

Rule 6(e), Fed. R. Crim. P. ..................................................................................................... 4, 5

## MEMORANDUM OF LAW

Petitioner, Anthony S. Pitch, through Counsel, files this Memorandum of Law in Support of Petition for Order Directing Release of Transcripts and Related Materials of the "Moore's Ford Lynching" that was convened on December 3, 1946 and states as follows:

### I.   FACTUAL BACKGROUND

#### A.   The Petitioner

Petitioner, Anthony S. Pitch is an historian, and author of a number of books including the recently published "*They Have Killed Papa Dead!*" - *The Road to Ford's Theatre, Abraham Lincoln's Murder, and the Rage for Vengeance*, described by Harold Holzer, co-chairman of the U.S. Commission on Lincoln's Bicentennial, as "a perfect storm of a book." Publisher's Weekly hailed it as "a real page-turner…No reader will come away unmoved." The book received the Arline Custer Memorial Prize for best book of 2009 from the Mid-Atlantic Regional Archives Conference. Another of his books, *The Burning of Washington: The British Invasion of 1814*, was a selection of the History Book Club, winner of the Arline Custer Memorial Prize for best book of 2001 from the Mid-Atlantic Regional Archives Conference, and recipient of the Maryland Historical Society's annual book award.

On the anniversary of Lincoln's assassination Mr. Pitch was invited to speak in Ford's Theatre. He has appeared numerous times on C-Span TV, most recently in Washington Journal and in its documentary on the White House. He was interviewed on C-Span by Brian Lamb in the Library of Congress on the inaugural airing of Book TV. Two of Pitch's anecdotal history tours in Washington, D.C. have been filmed by C-Span TV: *The Assassination of Abraham Lincoln* and *Washington, D.C. Homes of the Presidents Before & After the White House*. Pitch was also filmed by Tribune Broadcasting TV while narrating inside the White House. He was

1

featured in *First Invasion*, The History Channel's two-hour documentary on the War of 1812. Pitch has also been featured on National Public Radio, Voice of America, Fox News, BBC, TV2Denmark, and TV New Zealand.

Mr. Pitch is invited annually to give a speech at Fort McHenry on the anniversary of Francis Scott Key writing the national anthem, gave the Judith P. Austin Memorial Lecture in the Library of Congress, and has been guest speaker inside the U.S. Capitol, at the Smithsonian Institution, the Massachusetts Institute of Technology and the National Press Club in Washington, D.C.  A former journalist in England, Africa and Israel, Mr. Pitch is a former Associated Press Broadcast Editor in Philadelphia, and a senior writer in the books division of U.S. News & World Report in Washington, D.C.  Mr. Pitch has spent several years researching his latest project, a comprehensive work on the Moore's Ford Lynching, in order to shed light on an extremely significant event in American History which remains surrounded in mystery and uncertainty.

**B. The Moore's Ford Lynching**

On July 25, 1946, the last mass "lynching" in the United States occurred in what has become known as the "Moore's Ford Lynching".  On that date, a group of white people, with estimates and accounts ranging from 30 to more than 100 people, participated in or were present when two African American couples were pulled from a car and shot at close range by an estimated 60 bullets.

The victims of the "lynching" were George W. Dorsey, a U.S. Army WWII veteran who had recently returned after serving five years in the Pacific, his wife, Mae Murray Dorsey, Roger Malcom and his wife, Dorothy Malcom.

2

In the aftermath of this tragedy, future U.S. Supreme Court Justice, Thurgood Marshall, then General Counsel of the NAACP, expressed grave doubt as to the legitimacy of any State investigation and called upon the federal government to investigate. National outrage over this brutal attack ultimately resulted in President Truman ordering the Federal Bureau of Investigation to investigate the case, notwithstanding an investigation having been launched by the State of Georgia. After an approximate four month FBI investigation, a 23 man federal grand jury was convened at the federal courthouse in Athens, Georgia on December 3, 1946 by U.S. District Court Judge, T. Hoyt Davis to hear testimony from witnesses to, or others who may have had knowledge of this incident. The case was presented by U.S. District Attorney, John P. Cowart and John Kelly from the U.S. Department of Justice.

After three weeks of testimony from scores of witnesses, the Grand Jury concluded; reporting that it was "unable to establish the identity of any person or persons participating in the murders or in any violation of the civil rights statutes of the United States."[1]. In the 67 years since the lynching, there have been sporadic re-openings of the investigation but not one person has ever been arrested or charged in connection with the lynching. However, this terrible tragedy remains a polarizing event in the Civil Rights movement and debate, and is annually re-enacted to continue to draw attention to the unsolved atrocity.

The Moore's Ford Lynching has been credited as the catalyst behind President Truman's creation of the President's Committee on Civil Rights by Executive Order No. 9808 on December 5, 1946 the same week that the Moore's Ford Grand Jury was convened. At the same time, President Truman unsuccessfully attempted to obtain passage of a federal anti-lynching law, which was defeated by the Southern Democrat voting bloc.

3

Most recently, in 2006, over 3,725 pages of the investigation file were released to the public pursuant to an Associated Press pursuant to the Freedom of Information Act and new information was reported to have been discovered by law enforcement authorities. The FBI and the Georgia Bureau of Investigation re-opened their investigations in 2008 with attendant publicity. However, to this day, no person has ever been charged in connection with this crime and there is no indication of any ongoing investigation.

## II.   ARGUMENT

### A. Legal Standard for the Release of Grand Jury Transcripts

There is a long legal tradition and history in this country of maintaining the secrecy of grand jury proceedings *In re Biaggi*, 478 F.2d 489, 491 (2d Cir. 1973). The tradition is now codified in Federal Rule of Criminal Procedure 6(e). The rationale for maintaining the secrecy has been stated to be:

> **(1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.** *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681–82 n.6 (1958) (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954))

However, there are exceptions to this rule of secrecy, including those specifically stated in Rule 6(e)(3) of the Federal Rules of Criminal Procedure.  More importantly for the present

4

Petition, even without a Rule 6(e)(3) exception, there can be "special circumstances in which release of grand jury records is appropriate even outside the boundaries of the rule." *In re Petition of Craig*, 131 F.3d 99, 102 (2d Cir. 1997) (quoting *Biaggi*, 478 F.2d at 494). In *Craig*, the Second Circuit endorsed the "special circumstances" exception first stated in *Biaggi*. Specifically, the *Craig* Court held that "permitting departures from Rule 6(e) is fully consonant with the role of the supervising court and will not unravel the foundations of secrecy upon which the grand jury is premised." *Id.* at 103.

In fact, the Supreme Court has recognized that a court has substantial discretion to determine whether grand jury transcripts should be released, *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979), and that "Rule 6(e) is but declaratory" of that principle. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959). Upon a satisfactory showing of special circumstances, it is recognized that courts have "inherent authority" to release grand jury material outside Rule 6(e)'s enumerated exceptions. *United States v. Aisenberg*, 358 F.3d 1327, 1347 (11th Cir. 2004) (citing *In re Petition to Inspect & Copy Grand Jury Materials (In re Hastings)*, 735 F.2d 1261 (11th Cir. 1984)); *In re Petition of Craig*, 131 F.3d at 102-03; *see also: In re Special Grand Jury 89-2*, 450 F.3d 1159, 1178-79 (10th Cir. 2006) (remanding for determination of existence of exceptional circumstances); *In re Special Feb., 1975 Grand Jury*, 662 F.2d 1232, 1235-36 (7th Cir. 1981) (noting that the "court in rare situations may have some discretion to slip entirely around Rule 6(e) and permit disclosure"), aff'd on other grounds sub nom., *United States v. Baggot*, 463 U.S. 476 (1983).

The *Craig* Court, in order to provide guidance on special circumstances, set forth a "non-exhaustive" list of nine factors to be considered by Judges evaluating petitions for the release of grand jury records. Specifically, the Court stated:

5

> **Mindful that there is no talismanic formula or rigid set of prerequisites, we offer the following non-exhaustive list of factors that a trial court might want to consider when confronted with these highly discretionary and fact-sensitive "special circumstances" motions: (i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material—either permissibly or impermissibly—has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question.** *Craig*, supra at 106.

### B. The Court Has Authority To Unseal Historically Significant Grand Jury Records

One of the emerging categories of "special circumstances" found to justify the release of grand jury records involves historically significant cases. With respect to historical cases, the *Craig* Court held that in cases of special importance, historical interest, standing alone, may qualify as a special circumstance justifying release of grand jury records. *Craig*, 131 F.3d at 105.

Following the holding in *Craig*, a number of courts have recently ordered the release of grand jury testimony and records in historically significant cases. Among the recent orders were the releases of grand jury materials in (i) the Alger Hiss espionage case, *In re Petition of Am. Historical Ass'n*, 49 F. Supp. 2d 274 (S.D.N.Y. 1999); (ii) the Julius and Ethel Rosenberg espionage case, *In re Petition of National Security Archive*, Summary Order at 1-2, 08 Civ. 6599 (S.D.N.Y. Aug. 26, 2008); (iii) the James "Jimmy" Hoffa criminal indictment, *In re: Petition of Tabac*, 2009 WL 5213717 (M.D.Tenn., April 14, 2009); and (iv) former President Richard Nixon's Watergate Grand Jury testimony, *In re: Petition of Kutler*, Misc. No. 10-547 (RCL), (D.D.C., July 29, 2011)(Appendix Ex. )

In each of these cases, the Court applied the *Craig* "special circumstances" test and evaluated the nine factors or inquiries set forth by the *Craig* Court. In each of these cases, the Courts found that the historical significance of the event or incident and the passage of considerable time were sufficient to warrant the release of grand jury testimony and records.

For example, in *American Historical Association*, and *In re Petition of National Security Archive*, Summary Order at 1-2, 08 Civ. 6599 (S.D.N.Y. Aug. 26, 2008), ECF No. 3, the Southern District Court of New York recognized the historic importance of the cases, applied the *Craig* factors and released of the entire grand jury records pertaining to the indictments of Alger Hiss and of Julius and Ethel Rosenberg.

Recently, in *In re Petition of Tabac*, 2009 WL 5213717 (M.D. Tenn. Apr. 14, 2009), the court found that the Jimmy Hoffa grand jury material was "of great historical importance," held that the Petitioner had established special circumstances and ordered the release of grand jury records. *Id.*

In 2011, the District Court for the District of Columbia was presented with a petition by Stanley Kutler, a noted historian, seeking the release of former President Nixon's grand jury testimony regarding Watergate. In *In re: Petition of Kutler*, Misc. No. 10-547 (RCL), (D.D.C., July 29, 2011), the Court found that there was no question as to the "great historical significance" of the records and that "The disclosure of President Nixon's grand jury testimony would likely enhance the existing historical record, foster further scholarly discussion, and improve the public's understanding of a significant historical event." Id. at 11.

These decisions have established consistent precedent that in historically significant cases, particularly where a substantial amount of time has elapsed since the grand jury, special circumstances exist warranting the release of the grand jury records.

7

### C. Special Circumstances Exist Warranting the Release of the Moore's Ford Lynching Grand Jury Materials

Applying the nine factors set forth in *Craig* to the Moore's Ford Lynching strongly supports the instant Petition for the Release of the Grand Jury records. Specifically, with respect to the first factor, the Party seeking disclosure in this case, Anthony Pitch, is a noted historian and author of several award winning books on historic events and his motivation in seeking these records is solely to complete the historic record and answer outstanding questions about this polarizing event.

As far as the second factor, the Petitioner is not in a position to know at this time whether the government will oppose this Petition. However, even if opposed, "Government support cannot "confer" disclosure, nor can government opposition preclude it." *Craig*, supra at 106

The Third and Fourth factors consider why the information is being sought and what information is being sought. In this case the information sought is the contemporaneous testimony of those individuals whom the government felt may have relevant knowledge of this incident. As discussed above, the Moore's Ford Lynching is a significant historical event, and is considered the incident which led to President Truman's groundbreaking establishment of a President's Committee on Civil Rights. While virtually every other document associated with the investigation has been released pursuant to the Freedom of Information Act, the grand jury testimony has remained sealed. Moreover, journalists' accounts, both during and since the grand jury convened, reveal that many witnesses were unwilling to disclose their testimony publicly at the time. As such, this information is critical in reaching a complete understanding of this event. On this inquiry, the Craig Court observed:

> **The reasons why the otherwise secret information is being sought should be explored in some detail. Thus, far from being impermissible, an argument that significant historical interest militates in favor of release is totally appropriate and even weighty.** *Craig*, supra at 106.

The fifth factor looks at the age of the grand jury records. As noted above the Moore's Ford Grand Jury was convened and concluded in December of 1946, fully 67 years ago. Notably, this is a longer time period, significantly longer in some of the cases, between the grand jury and the Order granting release than in any of the above cited cases. For example, the Alger Hiss Order was issued 52 years after the oldest of the two grand juries, the Rosenberg records were released 58 years after the grand jury, the Order releasing the Hoffa Grand Jury testimony was 46 years after the grand jury, and the Order Releasing Richard Nixon's grand jury testimony was issued only 36 years after the testimony was given. As noted, in this case, the grand jury convened and concluded its work 67 years ago. The *Craig* Court found the timing issue to be one of the most crucial, holding:

> **The timing of the request remains one of the most crucial elements. Time matters in several ways. First, if historical interest in a specific case has persisted over a number of years, that serves as an important indication that the public's interest in release of the information is substantial. (Hence the hypotheticals involving John Wilkes Booth and Aaron Burr.) Second, the passage of time erodes many of the justifications for continued secrecy.** *See Douglas Oil*, **441 U.S. at 222, 99 S.Ct. at 1674 (noting that the interests in grand jury secrecy are reduced after the grand jury has ended its activities). Third, the passage of time eventually, and inevitably, brings about the death of the principal parties involved in the investigations, as well as that of their immediate families. And the continued existence and vulnerability of such parties is, of itself, a factor that a court should consider.** *See In re Petition of May*, **No. M 11–189, at 3–4 (S.D.N.Y. Jan. 20, 1987) (unpublished memorandum and order) (concluding that, in light of the death of the principals, "we find a considerable public interest in disclosure and no interest in secrecy").** *Craig*, supra at 107.

9

In this case, it is almost certain that most, if not all, of the witnesses who testified are deceased, and any who remain alive are likely near or over 100 years of age. At the same time, the public and historical interest in this case has remained strong, as evidenced by the annual re-enactment of the tragedy by the Moore's Ford Memorial Committee.

The sixth factor calls for an examination of the "status" of the principals and their families. As noted above, the Moore's Ford grand jury was a fact finding grand jury convened to attempt to identify possible perpetrators, rather than to indict a known suspect. As such there are no identifiable "principals" whose status may be affected.

The seventh inquiry is the extent to which the grand jury materials have previously been made public, permissibly or impermissibly. In this case, virtually all of the available records except for the grand jury have been released in response to FOI requests. In addition, many subsequent writings have provided accounts from persons who were called as grand jury witnesses and who recounted their grand jury testimony.

The eighth factor relates to the current status of witnesses, living or dead, who may be affected by the disclosure. In this case, the identities of many, if not most, of the witnesses who testified in 1946 have been revealed through news articles at the time and subsequent writings. Virtually all of those identified witnesses were adults at the time of testifying, and most are undoubtedly deceased, and any still alive would likely be over one hundred years old today.

The ninth and final factor looks for any continuing need to maintain the secrecy of the proceedings. As noted, in this case, the grand jury was convened 67 years ago. No parties were ever charged with any crime for these murders and it appears inevitable that no person ever will be. The Petitioner has no information to suggest that there is an active criminal investigation still

ongoing or that charges will be brought against anyone. Again, given the age of the case, any perpetrator would likely be near or over 100 years old, if any are still alive.

### III. Conclusion

It is established that courts have the inherent authority to release grand jury records, beyond the Rule 6(e) exceptions, upon a showing of special circumstances. A number of recent decisions have found special circumstances to exist in historically significant cases where substantial time has passed since the grand jury convened and ordered the release of grand jury materials and testimony.

The Moore's Ford Lynching remains a polarizing and historically significant event in American history, and the grand jury was concluded fully 67 years ago. Applying the nine factor test enunciated in *In re Petition of Craig*, supra. to this case, Petitioner submits that special circumstances exist and respectfully requests an Order of this Court releasing the grand jury transcripts and materials from the Moore's Ford Lynching federal grand jury convened on December 4, 1946 in Athens Georgia.

Dated: January 29, 2014

Respectfully Submitted,

Joseph J. Bell, Jr., *Pro hac vice*
Bell, Shivas & Fasolo, P.C.
150 Mineral Springs Dr.
Rockaway, NJ 07866
(973)442-7900
(97)442-7990 (fax)

Counsel for Petitioner