IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| IN RE PETITION OF: ) | |
| ) | |
| ANTHONY S. PITCH ) | MISCELLANEOUS NO. 5:14-MC-2(MTT) |
| ) | |

ORDER

Anthony S. Pitch has petitioned the Court to order the release of "transcripts and related materials of the 'Moore's Ford Lynching' grand jury convened in Athens, Georgia on December 2, 1946." (Doc. 1 at 1). As discussed below, neither this Court nor the United States Attorney has possession of any documents from the grand jury's investigation into the Moore's Ford lynching. Therefore, the petition is **DENIED without prejudice.**

Mr. Pitch is a historian researching the July 25, 1946 murder of four African-Americans in Walton County, Georgia. The murders are commonly known as the Moore's Ford lynching. They occurred shortly after the racially charged 1946 Democratic Party gubernatorial primary election, the first Democratic primary in which black citizens were allowed to vote. In that election, former Governor Eugene Talmadge lost the popular vote to progressive James V. Carmichael but crushed Carmichael in the county unit vote.[1] Some believe the murders were directly related to

---

[1] Along with the white primary, the county unit system was an effective tool to marginalize black voters. Created by the Neill Primary Act of 1917, the county unit system gave each county at a party's nominating convention two votes for each representative it had in the lower house of the General Assembly. Based on this formula, by 1944, Georgia's 159 counties had a total of 410 county unit votes. Fulton County, with a population of more than 500,000, had six of these votes, two for each of its three representatives. The three smallest counties, Glascock, Quitman, and Echols, with a combined population of less than 7,000, matched the voting strength of Fulton County at the Democratic Party's nominating convention. *See South v. Peters*, 89 F. Supp. 672 (N.D. Ga. 1950). In 1962, the Supreme Court ruled the county unit system unconstitutional. *Baker v. Carr*, 369 U.S. 186 (1962).

that election.[2]

President Truman ordered the Federal Bureau of Investigation to investigate the murders, and on December 3, 1946, Middle District Judge T. Hoyt Davis convened a grand jury in Athens to further investigate the murders.[3] According to one account, the FBI interviewed 2,790 people and the grand jury subpoenaed 106 witnesses. Laura Wexler, Fire in a Canebreak: The Last Mass Lynching in America 190 (2003). Notwithstanding the breadth of the investigation and the large number of people present at the time of the murders, no witness identified any of the participants and no indictments were returned.

Mr. Pitch asks that the grand jury's records, particularly transcripts, be unsealed. Unfortunately, after a thorough search by the Government, it has been determined that the United States Attorney for the Middle District has no records from the grand jury investigation. The Court has confirmed that this Court does not have possession of any records either. Mr. Pitch has located in the FBI archives some FBI records relating to the FBI's investigation of the Moore's Ford lynching. Also, counsel for Mr. Pitch has provided the Court with some documentation suggesting that grand jury transcripts were forwarded to the FBI in 1946. Although FBI historian John F. Fox, Jr., Ph.D., has

---

[2] According to a Talmadge biographer, the Walton County Sheriff told a reporter the day after the murders that he had no clues or suspects and nothing could be done. He added, however, "they hadn't ought to killed the two women." A man standing nearby then commented: "This thing's got to be done to keep Mister N____ in his place. Since the court said he could vote, there ain't been any holding him." William Anderson, The Wild Man From Sugar Creek: The Political Career of Eugene Talmadge 233 (1975); see also Calvin Kytle & James A. Mackay, Who Runs Georgia? A Contemporary Account of the 1947 Crisis that Set the Stage for Georgia's Political Transformation 72 (1998) ("[T]he lynching of the four Negroes near Monroe and the murder of another in Taylor County can be traced directly to the inflammatory nature of the 1946 campaign.").

[3] Ironically, it was Judge Davis who ruled the Georgia Democratic white primary unconstitutional. *King v. Chapman*, 62 F. Supp. 639 (M.D. Ga 1945), *aff'd Chapman v. King*, 154 F.2d 460 (5th Cir. 1946). When the Fifth Circuit affirmed Judge Davis on March 6, 1946, gubernatorial candidate Eugene Talmadge launched his racially divisive 1946 campaign for Governor.

informed Mr. Pitch that the FBI does not currently have the transcripts, Dr. Fox has located some records relating to the FBI's investigation.  These records apparently are not grand jury records, but Dr. Fox thinks it likely that some of the FBI's documents were not produced in response to Mr. Pitch's Freedom of Information Act request in order to protect grand jury secrecy.

In short, there is no evidence that the grand jury transcripts or any other grand jury records exist.  Certainly, they are not in the possession of this Court or the United States Attorney.  Accordingly, Mr. Pitch's petition is **DISMISSED without prejudice** subject to his right to renew this action in the event he discovers that the FBI has located grand jury records relating to the investigation of the Moore's Ford Lynching.

**SO ORDERED,** this 19th day of August, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT