**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **IN RE PETITION OF:** ) | |
| ) | |
| **ANTHONY S. PITCH** ) | **MISCELLANEOUS NO. 5:14-MC-2 (MTT)** |
| ) | |

## ORDER

This matter involves a federal grand jury's investigation into what has been described as the last mass lynching in the United States.[1]  Both the murders and the grand jury investigation took place in 1946.  Anthony S. Pitch asks the Court to unseal the grand jury's records.  For the following reasons, the petition is **GRANTED**.

## I. BACKGROUND

Pitch is a historian researching the July 25, 1946 murder of four African-Americans in Walton County, Georgia.  The incident is commonly known as the Moore's Ford lynching.  The victims, two married couples, were dragged from a car, tied to a tree, and shot multiple times.  According to most accounts, a crowd of some considerable size was present.  The murders occurred shortly after the racially charged 1946 Democratic Party gubernatorial primary election, the first Democratic primary in Georgia in which black citizens were allowed to vote.  In that election, former Governor Eugene Talmadge lost the popular vote to progressive James V. Carmichael but

---

[1] The Government does not dispute the historical significance of the Moore's Ford lynching, and the parties have freely discussed historical events that have not been formally documented in the Court's record.  Given that the historical events are not disputed and are well documented, the Court does the same.

crushed Carmichael in the county unit vote.[2]  Some believe the murders were directly related to that election.[3]

President Truman ordered the Federal Bureau of Investigation to investigate the murders, and on December 3, 1946, District Court Judge T. Hoyt Davis convened a grand jury.[4]  According to one account, the FBI interviewed 2,790 people and the grand jury subpoenaed 106 witnesses.  Laura Wexler, Fire in a Canebreak: The Last Mass Lynching in America 190 (2003).  Notwithstanding the breadth of the investigation and the presence of a number of witnesses, no one identified any of the participants, and no indictments for the murders were returned.  The case remains unsolved.

On February 3, 2014, Pitch petitioned this Court for an order unsealing the grand jury transcripts.  Doc. 1.  This Court denied the petition without prejudice on August 19, 2014 because, at the time, there was no evidence any records existed.  Doc. 7 at 3.

---

[2] Along with the white primary, the county unit system was an effective tool to marginalize black voters. Created by the Neill Primary Act of 1917, the county unit system gave each county at a party's nominating convention two votes for each representative it had in the lower house of the General Assembly.  Based on this formula, by 1944, Georgia's 159 counties had a total of 410 county unit votes. Fulton County, with a population of more than 500,000, had six of these votes, two for each of its three representatives.  The three smallest counties, Glascock, Quitman, and Echols, with a combined population of less than 7,000, matched the voting strength of Fulton County at the Democratic Party's nominating convention.  *See South v. Peters*, 89 F. Supp. 672 (N.D. Ga. 1950).  In 1962, the Supreme Court ruled the county unit system unconstitutional.  *Baker v. Carr*, 369 U.S. 186 (1962).

[3] According to a Talmadge biographer, the Walton County Sheriff told a reporter the day after the murders that he had no clues or suspects and nothing could be done. He added, however, "they hadn't ought to killed the two women." A man standing nearby then commented: "This thing's got to be done to keep Mister N____ in his place. Since the court said he could vote, there ain't been any holding him."  William Anderson, The Wild Man From Sugar Creek: The Political Career of Eugene Talmadge 233 (1975); *see also* Calvin Kytle & James A. Mackay, Who Runs Georgia? A Contemporary Account of the 1947 Crisis that Set the Stage for Georgia's Political Transformation 72 (1998) ("[T]he lynching of the four Negroes near Monroe and the murder of another in Taylor County can be traced directly to the inflammatory nature of the 1946 campaign.").

[4] Ironically, it was Judge Davis who ruled the Georgia Democratic white primary unconstitutional. *King v. Chapman*, 62 F. Supp. 639 (M.D. Ga. 1945), *aff'd Chapman v. King*, 154 F.2d 460 (5th Cir. 1946).  When the Fifth Circuit affirmed Judge Davis on March 6, 1946, gubernatorial candidate Eugene Talmadge launched his racially divisive campaign for Governor.

The assumption then was the records had been routinely destroyed or were somehow lost. On January 17, 2017, Pitch renewed his motion, claiming that his investigation had revealed the records were at the National Archives and Records Administration in Washington, D.C. Docs. 8 at 7, 10. That same day, the Court ordered the Department of Justice to produce the records for in camera inspection. Doc. 9. The Government then confirmed that transcripts, but no other records, had been found and filed copies under seal. Docs. 14; 16. Relying on Fed. R. Crim. P. 6(e), the Government now maintains that the records must remain sealed.[5]

## II. DISCUSSION

### A. Grand Jury Secrecy Generally

"It has long been a policy of the law that grand jury proceedings be kept secret." *United States v. Aisenberg*, 358 F.3d 1327, 1346 (11th Cir. 2004) (quoting *Blalock v. United States*, 844 F.2d 1546, 1555 (11th Cir. 1988)). "The English rule of grand jury secrecy has been incorporated into our federal common law and remains 'an integral part of our criminal justice system.'" *Id.* The reasons, or "policy and spirit," behind this traditional rule of secrecy are:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear

---

[5] The Government does not question this Court's jurisdiction or Pitch's standing. Both issues were addressed by the Seventh Circuit in *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016). For the reasons stated there, it is clear this Court has jurisdiction and Pitch has standing. *Id.* at 757-58. Pitch has a right to seek access to public records, including grand jury testimony. *See id.* at 758-60. Denial of access to those records is an "injury in fact." *See id.* Additionally, this denial is directly traceable to the Government, and the injury can be redressed by the relief he seeks, giving him standing to assert this action. *See id.* at 759-60. Additionally, this Court has federal question jurisdiction under 28 U.S.C. § 1331 as the action is "arising under the Constitution, laws, or treaties of the United States." *Carlson*, 837 F.3d at 761.

at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958) (quotation marks omitted) (quoting *United States v. Rose*, 215 F.2d 617, 628-29 (3d Cir. 1954).

Federal Rule of Criminal Procedure Rule 6(e) codifies this general rule of secrecy, with narrow exceptions. The only Rule 6(e) exception available to a party other than the government or a defendant is Rule 6(e)(3)(E)(i):

> (E) The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs— of a grand-jury matter:
>
>> (i) preliminarily to or in connection with a judicial proceeding;

A party invoking this exception must prove "particularized need." *See United States v. Baggot*, 463 U.S. 476, 479-480, 480 n.4 (1983); *see also United States v. John Doe, Inc. I*, 481 U.S. 102, 112 (1987); *In re Am. Historical Ass'n*, 49 F. Supp. 2d 274, 283 (S.D.N.Y. 1999). In *Douglas Oil Co. of Ca. v. Petrol Stops NW*, 441 U.S. 211 (1979), the Supreme Court addressed what it takes to establish particularized need:

> Parties seeking grand jury transcripts under Rule 6(e) must show the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

441 U.S. at 222 (citing *Proctor & Gamble Co.*, 356 U.S. at 683, and *Dennis v. United States*, 384 U.S. 855 (1966)).[6] Thus, a party other than the government or a defendant seeking disclosure of grand jury records under Rule 6(e)(3)(E)(i) holds the burden of satisfying the three-prong *Douglas Oil* test. *See id.*

But it has long been recognized that a district court's authority to order disclosure of grand jury records is not limited to the exceptions found in Rule 6(e). In this circuit, the most comprehensive discussion of the inherent authority of district courts to order disclosure of grand jury records is found in *In re Petition to Inspect and Copy Grand Jury Materials (Hastings)*, 735 F.2d 1261 (11th Cir. 1984). In *Hastings*, a judicial investigating committee sought records of a grand jury that had returned an indictment against a federal district court judge. *Id.* at 1263-65. The judge, who had been acquitted of the charges in the indictment, opposed disclosure of the records. *Id.* at 1264. He argued, among other things, that Rule 6(e) "is the controlling source of law in this area and that none of its stated exceptions to the rule of secrecy" allowed the judicial investigating committee access to the records. *Id.* at 1267. The district court disagreed, reasoning that Rule 6(e) did not provide "the exclusive framework" within which a district court could exercise its discretion to release grand jury records. *Id.* Relying on the court's "general supervisory authority over grand jury proceedings," the district court ordered the disclosure of the grand jury records. *Id.* at 1267-68. The

---

[6] *See also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 442-43 (1983) (applying the *Douglas Oil* test as the standard for determining "particularized need"); *Baggot*, 463 U.S. at 479-80, 80 n.4 (characterizing the test articulated in *Douglas Oil* as the "particularized need test," which "requires that the materials sought be 'needed to avoid a possible injustice in another judicial proceeding' and that the moving party's request be 'structured to cover only material so needed'" (quoting *Douglas Oil Co.,* 441 U.S. at 222)); *United States v. Gonzalez*, 452 F. App'x 844, 847 (11th Cir. 2011) ("In order to demonstrate a particularized need, the requesting party must show that 'the material [he] seek[s] is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [his] request is structured to cover only material so needed.'" (quoting *Douglas Oil*, 441 U.S. at 222)).

Eleventh Circuit affirmed, holding that the district court's conclusion "that it had inherent power beyond the literal wording of Rule 6(e) is amply supported." *Id.* at 1268. To reach this conclusion, the Eleventh Circuit carefully examined the history of Rule 6(e). Noting that the Supreme Court had ruled that Rule 6(e) is "but declaratory" of the principle that disclosure is committed to the discretion of district judges and that the Advisory Committee's notes on Rule 6(e) acknowledge that the Rule "continues the traditional practice of secrecy . . . except when the court permits a disclosure," the Eleventh Circuit concluded that "it is certain that a court's power to order disclosure of grand jury records is not strictly confined to instances spelled out in the rule." *Id.* at 1268 (quoting Fed. R. Crim. P. 6 advisory committee's note to (e)). Accordingly, the court concluded that "the exceptions permitting disclosure were not intended to ossify the law, but rather are subject to development by the courts in conformance with the rule's general rule of secrecy." *Id.* at 1269.

Simply put, a district court's power to order disclosure of grand jury records does not "stand or fall upon a literal construction of the language of Rule 6(e)." *Id.* But while district courts have authority to act outside Rule 6(e), they should turn to that authority only if there exist "exceptional circumstances consonant with the rule's policy and spirit." *Id.* at 1269.

### B. **Pitch's Request for Disclosure**

Pitch argues the Moore's Ford lynching grand jury transcripts should be unsealed to "enhance the historical record, foster scholarly discussion and improve the public's understanding of this historical event." Doc. 8 at 7-8. The Eleventh Circuit has not addressed the issue of whether the historical significance of grand jury records can

provide a basis for disclosure. However, every circuit that has addressed the issue has

recognized a "historical exception" to the traditional rule of grand jury secrecy.[7] Relying

on these cases, Pitch mainly argues that there is no reason to think the Eleventh Circuit

would not recognize a historical exception as well and contends that the facts here

clearly warrant unsealing the 71-year-old transcripts.[8]

     For its part, the Government disputes neither the historical significance of the

grand jury transcripts nor the legitimate public interest in the Moore's Ford lynching.

Rather, the Government opposes disclosure on very narrow grounds; it contends,

effectively, that Rule 6(e) provides the sole basis for disclosing grand jury records and

because Pitch's request does not fall within any of the exceptions provided by Rule 6(e),

his petition must be denied.

---

[7] *See, e.g.*, *Craig*, 131 F.3d 99 (2d Cir. 1997) ("[I]n some situations historical or public interest alone could justify the release of grand jury information."); *In re Petition of Nat. Sec. Archive*, 104 F. Supp. 3d 625 (S.D.N.Y. 2015) (ordering disclosure of grand jury testimony from the Julius and Ethel Rosenberg investigation); *In re Petition of Kutler*, 800 F. Supp. 2d 42 (D.D.C. 2011) (ordering disclosure of President Nixon's grand jury testimony related to the Watergate investigation based on their "historical importance"); *In re Tabac*, 2009 WL 5213717 (M.D. Tenn. 2009) (ordering disclosure of grand jury transcripts from the investigation, indictment, and conviction of Jimmy Hoffa based on their "great historical importance"); *In re Petition of Am. Historical Ass'n*, 49 F. Supp. 2d 274 (S.D.N.Y. 1999) and *In re Petition of Am. Historical Ass'n*, 62 F. Supp. 2d 1100 (S.D.N.Y. 1999) (both ordering disclosure of grand jury transcripts from the investigation of Alger Hiss, an alleged Soviet spy, based on their "manifest historical importance"). The Court notes that in *United States v. McDougal*, the Eighth Circuit denied the petitioner's request for the release of her grand jury testimony during the Whitewater investigation. *See generally* 559 F.3d 837. In that case, the petitioner, in arguing for disclosure, asserted the "'common law right of access to court proceedings and records' and the '[c]ourt's supervisory power over its own records and files'" but did not argue for a historical exception to the general rule of grand jury secrecy. *Id.* at 840. Moreover, in *McDougal*, the Eighth Circuit opined that Rule 6(e) was the only avenue of disclosure absent a showing that the records were sealed in error. *Id.* at 840-41. But, as discussed above, this is inconsistent with the law of this Circuit, which, despite the Government's contention, recognizes that courts have the inherent authority to order disclosure beyond Rule 6(e). *Aisenberg*, 358 F.3d at 1347.

[8] Pitch also tries to fashion an argument that his request falls within Rule 6(e)(3)(E)(i). His petition, he seems to argue, constitutes a "judicial proceeding," and thus his request meets the *Douglas Oil* standard. This bootstrap effort is a nonstarter in every way. Certainly his request is made through a judicial proceeding, but a request is not made "preliminarily to or in connection with" a judicial proceeding simply because a petition seeking disclosure is filed. *See Baggot*, 463 U.S. at 479 ("[T]he term 'in connection with' . . . refer[s] to a judicial proceeding already pending, while 'preliminarily to' refers to one not yet initiated."). In other words, Pitch's request does not fall within Rule 6(e)(3)(E)(i), and he cannot satisfy the first prong of *Douglas Oil*—that the transcripts are needed "in another judicial proceeding"—by filing this proceeding to compel disclosure. *See Douglas Oil*, 441 U.S. at 222.

### 1. *United States v. Aisenberg*

Because the Government's opposition is based almost entirely on *United States v. Aisenberg*, 358 F.3d 1327 (11th Cir. 2004), the Court begins its analysis there. The Aisenbergs sought disclosure of grand jury testimony under both the district court's inherent authority *and* Rule 6(e), but the purpose for which they made their request was one covered by a Rule 6(e) exception, specifically Rule 6(e)(3)(E)(i). 358 F.3d at 1347-1348. The Aisenbergs wanted to use grand jury testimony to bolster their application for attorneys' fees under the Hyde Amendment in a criminal prosecution gone wrong. *Id*. at 1335. Thus, their request was clearly "preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). Therefore, the question was whether *Douglas Oil*'s "particularized need" test applied to a request made pursuant to both the district court's inherent authority and Rule 6(e)(3)(E)(i) when the request was for a purpose clearly contemplated by that Rule.

In effect, the Aisenbergs were hedging their bets. Because Rule 6(e)(3)(E)(i) provided an exception directly applicable to their request, they moved pursuant to that Rule. But in the event they could not meet the Rule 6(e)(3)(E)(i) test for disclosure, they wanted the district court to exercise its inherent authority to release the records. Not surprisingly, the Eleventh Circuit took a dim view of this approach. Clearly, the Aisenbergs were attempting an end run around *Douglas Oil*'s particularized need test. Allowing a party to avoid *Douglas Oil* in a situation where it clearly applied would not be within the "policy and spirit" of Rule 6. Accordingly, in reversing the district court's disclosure, the Eleventh Circuit held that the Aisenbergs could not invoke the district

court's inherent authority. *Aisenberg*, 358 F.3d at 1347-48. Rather, they had to

proceed under Rule 6(e). *Id.*

The Government asks the Court to put a different, much broader, spin on

*Aisenberg*. The Government argues *Aisenberg* does more than simply hold that the

*Douglas Oil* test governs when a request is clearly covered by Rule 6(e)(3)(E)(i). The

Government reads *Aisenberg* to say that a party invoking the court's inherent authority

to disclose grand jury records still must satisfy *Douglas Oil*, including the first prong:

"that the material they seek is needed to avoid a possible injustice in another judicial

proceeding." Doc. 11 at 5 (quoting *Aisenberg,* 353 F.3d at 1347). Effectively, this

would mean that the only time someone other than the Government or a defendant can

seek disclosure of grand jury records is when the records are sought "preliminarily to or

in connection with a judicial proceeding" as provided by Rule 6(e)(3)(E)(i).[9] The

Government acknowledged as much at the June 8 hearing:

> The Court: So you would read *Aisenberg* to mean that the
> only reason grand jury records can be released are for the
> reasons stated in Rule 6?
> [Government]: Yes, sir, as far as – yes, sir, essentially.

The Court disagrees. Instead, the Court reads *Aisenberg* to hold that when a party

seeks disclosure for a reason or purpose contemplated by Rule 6(e)'s exceptions, Rule

6(e) governs the request. Again, it would make no sense to allow a party who cannot

---

[9] While the Government effectively argues that Rule 6(e)(3)(E)(i) provides the only basis for disclosure here, the Government argued this expressly in *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016). In persuasive reasoning, the majority rejected that argument and found that "the Criminal Rules did not eliminate a district court's inherent supervisory power" over the grand jury. *Id.* at 762. In doing so, the court noted Rule 57(b), which recognizes that courts have the authority to regulate procedure where there is no controlling law but mandates they do so in a "manner consistent with federal law, these rules, and the local rules of the district." *Id.* ("To be sure, [district courts] are powerless to contradict the Rules where they have spoken . . . . But Rule 57(b) . . . informs us what a court may do when the Rules are silent." (quoting Fed. R. Crim. P. 57(b))). Moreover, the court described Rule 6(e) as "permissive" and stated "such a rule should not give rise to a negative inference that it abrogates the district court's inherent authority absent 'clear [ ] expression of [that] purpose." *Id.* at 763.

satisfy a governing Rule 6(e) exception to avoid Rule 6(e) by running to a district court's inherent authority.

But neither would it make sense to read *Aisenberg* to effectively gut a district court's inherent authority to disclose grand jury records. The Government's argument is irreconcilable with the clear holding in *Hastings* that district courts are not limited to Rule 6(e)'s exception. 735 F.2d at 1268. Indeed, the Eleventh Circuit recognized in *Aisenberg* that district courts have the inherent authority to act outside Rule 6(e) in exceptional circumstances. *Aisenberg*, 358 F.3d at 1347-48.

In sum, the Court reads *Aisenberg* to hold that when a request for grand jury records is covered by Rule 6(e)'s exceptions, then those exceptions govern. But when a request falls outside the listed exceptions of Rule 6(e), district courts have the inherent authority to order disclosure.

### 2. The "Historical Exception" to Grand Jury Secrecy

Pitch's request does not fit within any of Rule 6(e)'s exceptions. Although district courts may act outside Rule 6(e) to order disclosure of grand jury records, the Eleventh Circuit has made clear they should do so only if there exist "exceptional circumstances consonant with the rule's policy and spirit." *Hastings*, 735 F.2d at 1270. The question then is whether the historical significance of grand jury records can constitute an exceptional circumstance.

In *Hastings*, when determining whether exceptional circumstances existed, the Eleventh Circuit looked to Supreme Court precedent and concluded "disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy . . . ." 735 F.2d at 1272 (quoting *Douglas Oil*, 441 U.S. at 223). In other words,

the Court must apply a balancing test to determine whether exceptional circumstances are present, weighing carefully the factors favoring continued secrecy and the factors favoring public access to, in this case, historical information.  In applying this balancing test, the Court also considers the factors considered by the Second Circuit in *In re Craig* and by other courts recognizing the historical exception.[10]  131 F.3d 99, 106 (2d Cir. 1997); *see, e.g.*, *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016); *In re Am. Historical Ass'n*, 49 F. Supp. 2d 274 (S.D.N.Y. 1999).

The Court begins with the secrecy end of the scales of this balancing test.  The Court begins there because the Moore's Ford lynching grand jury adjourned nearly 71 years ago and, logically enough, "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification."  *Hastings*, 735 F.2d at 1272.  The reasons for grand jury secrecy are found, as discussed above, in the Supreme Court's decision in *United States v. Proctor & Gamble Co*, 356 U.S. 677 (1958).  Grand jury secrecy is necessary to prevent flight by those being investigated; to insure that grand jurors can operate with the utmost freedom; to prevent witness tampering; to encourage full disclosure by witnesses; and to protect the ultimately innocent who nevertheless are the subject of

---

[10] In *Craig*, the Second Circuit considered:

> (i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material—either permissibly or impermissibly—has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question.

131 F.3d at 106.

grand jury investigation. *Id.* at 681 n.6 (quoting *United States v. Rose*, 215 F.2d 617, 628-29 (3d Cir. 1954). The Government does not contend that any of these considerations will be furthered by the continued secrecy of the Moore's Ford lynching grand jury transcripts, and it is clear they are no longer relevant. As far as is known, all suspects, witnesses (with the possible exception of then very young children), and all grand jurors are dead. Further, it is beyond any reasonable possibility that a new criminal investigation could be opened. But while there is no reason particular to the Moore's Ford lynching to keep the grand jury records secret, the general "public interest in encouraging free and untrammeled testimony before future grand juries is still important." *Hastings*, 735 F.2d at 1274. But, of course, grand jury records do not always remain secret. Still, there remains some weight, albeit greatly diminished, on the secrecy end of the scales.

But Pitch must still establish a need for the grand jury records that outweighs any secrecy interest, however slight it may be. Several of the *Craig* factors are relevant to this end of the scales: (1) "the identity of the party seeking disclosure"; (2) "why disclosure is being sought"; and (3) "the extent to which the desired material . . . has been made public." 131 F.3d at 106. Essentially, these factors call for the examination of the legitimacy of the person or entity seeking disclosure and the reason for which disclosure is sought.

The Government does not dispute that Pitch is an accomplished author who has written many historical works, including a book on the Moore's Ford lynching, The Last Lynching: How a Gruesome Mass Murder Rocked a Small Georgia Town, published in

March 2016.[11]  Doc. 8 at 1-2; *Cf. In re Petition of Stuart McKeever*, 1:13-mc-00054-RCL (D.D.C. 2017) (stating fact that the petitioner was a "bona fide author" who had researched the case and published a book on it favored disclosure under *Craig*).  He undeniably seeks disclosure for a legitimate and important purpose—historical research into the unsolved murders that occurred at Moore's Ford.  *See generally* Doc. 8.

Clearly, the Moore's Ford lynching is a significant historical event.  Just as clearly, the testimony of the dozens of witnesses who testified before the grand jury has historical significance.  There has been and there continues to be significant public interest in the unsolved murders, the events that led up to them, and the ensuing investigation.[12]  *Cf. Craig*, 131 F.3d at 107 ("[I]f historical interest in a specific case has persisted over a number of years, that serves as an important indication that the public's interest in release of the information is substantial.").

But while the Moore's Ford lynching has been the subject of considerable public interest, the public record is relatively sparse.  There was no state prosecution, no trials, or other public proceedings following the federal grand jury's investigation.  Because the murders remain unsolved, much of the public interest in the ensuing years has naturally centered on speculation over the identity and motive of the murderers and why, given the number of witnesses, the murders could not be solved.  The transcripts will add considerably to the public record, and with no witnesses to interview, the grand jury

---

[11] In his Petition, Pitch says he is an historian of some renown, the author of eleven non-fiction works, and the recipient of much recognition for his work. Doc. 8 at 1-2.

[12] S*ee, e.g.*, Wayne Ford, *70th Observance of Moore's Ford lynching set in Monroe; reenactment of killings planned*, Athens Banner-Herald (July 21, 2016, 1:35 PM), http://onlineathens.com/mobile/2016-07-21/70th-observance-moores-ford-lynching-set-monroe-reenactment-killings-planned.

transcripts likely represent the last available source of information about what transpired at Moore's Ford.

Given all this, the Court finds that Pitch has established exceptional circumstances consonant with the policy and spirit of Rule 6(e). The reasons behind the traditional rule of grand jury secrecy, and thus the policy undergirding Rule 6(e), are no longer implicated. There is no need to protect witnesses from retribution, public scrutiny, or undue influence; there is no fear that suspects will flee; and innocent victims of grand jury scrutiny will not be embarrassed. Nothing favors continued secrecy other than the bare principle that grand jury proceedings should be secret, and while that is important, it is outweighed by the historical significance of the grand jury transcripts and the critical role they can play in enhancing the historical record of the tragic event that occurred at Moore's Ford. Indeed, it is difficult to imagine a more suitable case for the application of a historical exception to the rule of grand jury secrecy; of the cases applying the historical exception, none has involved events that took place over 70 years before the disclosure was ordered. Accordingly, the Court finds that Pitch has established exceptional circumstances that warrant the exercise of the Court's inherent authority to order disclosure.

### III. CONCLUSION

The Court **GRANTS** Pitch's request. But the Court notes that the Government has presented only a blanket objection to the release of the grand jury transcripts. The Court therefore affords the Government 21 days to provide objections to specific portions of the transcripts, if it so chooses. Otherwise, and absent appeal, the transcripts will be disclosed in their entirety.

**SO ORDERED**, this 18th day of August, 2017.


S/ Marc T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT